FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 OCT 14  AM 9:58

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:14-CR-131-A |
| OSCAR JAVIER SALINAS (01) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S DEPARTURE MOTION AND SENTENCING MEMORANDUM

TO THE HONORABLE JOHN MCBRYDE, UNITED STATES DISTRICT JUDGE:

The United States Attorney for the Northern District of Texas, by and through the undersigned Assistant United States Attorney, files this response opposing Salinas's sentencing memorandum, which seeks a downward departure or variance, and would respectfully show this Court as follows:

**Issues**

1.  Should the Court depart ten years on the basis that the child pornography guidelines are flawed?

2.  Should the Court ignore Salinas's extensive collection of hard core images and impose a lesser sentence based on his individual characteristics?

**Short Answer**

Salinas's claims fail to support a departure or variance.

The Fifth Circuit has rejected arguments that favor discarding consideration of the Guidelines on the grounds that they are unreasonable and not empirically based.

Government's Response to Defendant's Departure Motion - Page 1

The Court may rely on a variety of factors when fashioning an appropriate sentence; but using outdated guidelines based on lighter statutory penalties or an incomplete risk assessment should not be one of them.

**Argument and Authorities**

A.  **Child Pornography guidelines are not flawed**

The legislative history of § 2G2.2 demonstrates that it is the product not only of the Commission's institutional expertise, but also of extensive congressional legislation and oversight. Although the Commission has at times critiqued Congress's directives, it has never repudiated section 2G2.2, much less suggested that it lacks necessary direction from Congress to implement its statutory role. Therefore, section 2G2.2 embodies the Commission's and Congress's exercise of their institutional roles. As a result, this Court should decline Salinas's invitation to consider whether section 2G2.2 reflects unsound judgment.

Nonetheless, though the government and defendants apparently continue to disagree about the basis of the Guideline, the matter is of little consequence to the Fifth Circuit. "Empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them." *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011). In that case, Miller pled guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). *Id* at 116. His guideline range was 188 to 235 months; despite his request for a below-Guideline sentence, the district court sentenced Miller to 220 months. *Id* at 118. On appeal, Miller argued that his sentence was unreasonable because the applicable guideline, § 2G2.2, was not based on empirical data.

*Id* at 119. The Fifth Circuit not only rejected the claim that Guidelines are "unreasonable" or "irrational" simply because they are not based on empirical data, but it also refused to find merit in such argument, "even if it leads to some disparities in sentencing." *Id* at 121.

Salinas raises the same assertion here, also arguing that Congress has interfered with the Sentencing Commission's ability to properly regulate child exploitation guidelines. Once again, the Fifth Circuit has long held these claims are baseless. In *United States v. Meuir*, 344 Fed.Appx. 3, (5th Cir. 2009) (unpublished), a case rising from the Northern District of Texas (Fort Worth Division), the defendant urged a variance from the sentencing guideline range for receipt of child pornography on two grounds: (1) that he was a first time offender and, (2) more pertinently, that the applicable sentencing guideline was flawed because Congress directly amended it, abrogating the Commission's role (the Stabenow argument). In determining the reasonableness of the defendant's guideline range sentence, the Fifth Circuit, in a per curium opinion, unequivocally rejected the "unreasonable-ness of the Guideline" argument, stating:

> Appellant's second argument in favor of his request for a downward variance at sentencing-that § 2G2.2 was structurally flawed because it was amended directly by Congress, circumventing the Sentencing Commission-is clearly meritless. The Sentencing Commission derives its authority from Congress, and Congress can amend the Guidelines directly should it choose to do so. 18 U.S.C. § 3553(a)(4)(A)(I). The simple fact that Congress directly amended a Guideline does not render that Guideline flawed. The district court's failure to respond directly to this argument when giving a within-Guideline sentence is not procedural error, since the argument is not legitimate.

*Meuir*, 344. Fed.Appx. at 7. *See also, United States v. Samples*, 2010 WL 653719 (5th Cir.) (unpublished case rising from the Northern District of Texas; rejecting the same argument and citing *Meuir*) and *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (noting that unpublished opinions may be persuasive authority).

To the extent that Salinas now asks this Court to *categorically* vary on every case arising under § 2G2.2, the government submits that such a request would require the Court to disregard Salinas's specific nature and characteristics and would undermine the Court's ability to impose "individualized sentencing," the familiar battle cry of every defendant who once complained about the mandatory nature of the Guidelines.

**B.    Salinas's individual characteristics fail to outweigh the seriousness of the offense**

Salinas also argues that a downward departure or variance is warranted to assure that the Defendant's sentence adequately takes into account the statutory objectives stated in 18 U.S.C. § 3553(a)(2). The Government disagrees.

Although the Sentencing Guidelines are now advisory, "a sentencing court must still carefully consider the detailed statutory scheme created by [the Guidelines], and should apply them in the same manner as before [*Booker*]." *United States v. Sam*, 467 F.3d 857, 860-61 (5th Cir. 2006)(citing *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005)(internal quotations omitted). A sentence within the properly calculated guideline range typically will have considered all relevant factors enumerated in 18 U.S.C. § 3553. *See, Rita v. United States*, 127 S.Ct. 2456, 2464-65 (2007) ("it is fair to

assume that the Guidelines, insofar as practicable, reflect a rough approximation of the sentences that might achieve section 3553(a)'s objectives").

The section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

1.  **Salinas's conduct, when viewed with section 3553 factors, supports a sentence within the calculated Guideline range.**

Statutorily, this Court is permitted to consider any information concerning a defendant's background, character and conduct. 18 U.S.C. § 3661. Salinas asks the Court to consider his lack of criminal history, his low-risk of reoffending, and other sentencing options to impose a lesser sentence. However, Salinas's lack of criminal history has already been considered by the Sentencing Commission and is reflected in the Criminal History category. Moreover, that lack of criminal history fails to take into account Salinas's own admission that he had been viewing child pornography for at least five years—which is most of his adult life.

### a. Nature and circumstances of the offense

The conduct surrounding Salinas shows that most of his adult life centered on an addiction to child pornography, and that interest in young girls was escalating.

Salinas possessed a collection of child pornography for at least five years before he was finally stopped by law enforcement. (PSR ¶ 9) During that same time frame, Salinas worked at three different elementary schools. (PSR ¶ 52)

When Homeland Security agents conducted a search of Salinas's bedroom, they found approximately 50 gigabytes of child pornography on an external hard drive and on his computer. (PSR ¶ 9) Those child pornography files were categorized into different folders and included more than 410 images depicting sadistic conduct with infants and toddlers. (PSR ¶¶ 8, 9)

In addition to trading child pornography, Salinas collected soiled children's underwear, admitting to agents that he had even stolen panties from piles of dirty laundry at the laundromat. (PSR ¶10) Agents also found in Salinas's bedroom the torso of a female mannequin wearing a pair of children's underwear. (PSR ¶10) Salinas acknowledged that he masturbated into the children's underwear and sometimes had sex with the mannequin. (PSR ¶10) Salinas himself recognized that his conduct was escalating; he told agents that he was capable of molesting a child in the future. (PSR ¶10)

      **b.    Incomplete risk assessment**

Although the evidence shows Salinas's behavior was growing increasingly more dangerous, Salinas provided this Court with a psychosexual report that suggests that Salinas is a good candidate for probation and at best a "moderate risk for sexual re-offense." (Salinas's Sentencing Materials, Appendix 1, p.2)

The government submits that this report fails to provide the Court with a true picture of Salinas's conduct. For example, though Salinas admitted to having a sexual attraction to little girls between the ages of 6 to 13 *and under five years*—which even the analyst considers to be "deviant and of serious concern," the report fails to acknowledge that Salinas is in fact a pedophile.

Second, the report does not appear to take into account Salinas's statements that he believes he could molest children, that he masturbates to child pornography videos, and that he has acquired soiled panties belonging to prepubescent girls, which he used during masturbation.

The report also fails to address the fact that Salinas has progressed to using a mannequin to assist with his sexual fantasies involving prepubescent girls. Finally, the report states that Salinas has made no attempts to make direct physical contact with a minor for "sexual purposes." Yet, the evidence shows that Salinas deliberately placed himself in occupations that placed him near prepubescent girls daily. Salinas was also willing to steal dirty panties at laundromats—conduct which places him beyond an individual who is engaging in simple sexual fantasy, as the defense would have the Court believe.

Salinas's risk assessment also provides little relevant information as to whether he would commit future non-contact sexual offenses, such as his crime of conviction, because there are no clear predictors of recidivism for child pornography offenses. Instead, the report utilizes tests that were not intended to predict recidivism among child pornographers and fails to account for the frequency that these cases go undetected. For example, Salinas's therapist used the Static-99 exam to represent to the Court that he is a moderate risk. (Psychosexual Assessment, p.2.) That exam was intended to address recidivism of *contact* offenders committing future *contact* offenses.

At least one circuit has recognized the flaws with this type of "predictive" test, which, it questions, may not even meet the *Daubert* standard for admissibility. The "Static 99 treats as a recidivist only someone who is *convicted* of a further sex offense, but the recidivism concern is with someone who *commits* a further offense, whether or not he is caught—yet if he is not caught, his subsequent crime does not affect the data on which the Static 99 calibrations are based." *United States v. McIlrath*, 512 F.3d 421, 425 (7th Cir. 2008) (emphasis added).

Salinas's conduct is more consistent with pedophilia than a person with poor boundaries. And at least one study shows that child pornography offenses are indicators of pedophilia. *See*, M. Seto, J. Cantor, and R. Blanchard, "Child Pornography Offenses Are Valid Diagnostic Indicator of Pedophilia," *Journal of Abnormal Psychology*, Vol 115, No. 3, pp. 610-15 (2006).

### c. Presence of risk factors

To date, there are *no* risk assessment tools that have been designed solely for use with Internet offenders. *See*, D. Richard Laws and William T. O'Donohue, *Sexual Deviance, Theory, Assessment, and Treatment*, 2d Edition. p. 448. Two Canadian researchers set out to study the question of recidivism of sex offenders by examining the results of 95 different studies that involved more than 31,000 sexual offenders of all types. *See*, R. Karl Hanson and Kelly Morton-Bourgon, *Predictors of Sexual Recidivism: An Updated Meta-Analysis* (2004) (hereafter referred to as "Hanson study").

On average, the Hanson study found that approximately 13.7% of sex offenders committed a new sexual offense and 36.9% committed another, non-sexual offense, within five to six years of release. (Hanson study, p.8.) Both figures, however, underestimated true recidivism rates because, of course, not all offenses are detected or reported. (*Id.*)

Although no one can predict with any certainty whether Salinas will reoffend, the studies generally found that sexual recidivism is associated with two broad factors—(1) deviant sexual interests and (2) antisocial orientation/lifestyle instability. (*Id.*)

Salinas's history and characteristics shows the presence to some degree of both factors. For example, the Hanson study found the presence of each of the following characteristics to increase the risk of reoffending: deviant sexual interest (defined to include a sexual interest in children), impulsive behavior, and sexual preoccupation. (Hanson study, pp.9, 13 15.) The study also concluded that individuals who commit non-contact offenses are more likely to reoffend. (Hanson study, p.11.)

The volume of images possessed by Salinas, his self-professed addiction to child pornography, and interest in children younger than five support a conclusion that Salinas has a deviant sexual interest and sexual preoccupation. Additionally, Salinas has exhibited impulsive behavior by stealing children's underwear.

### d. Consideration of Section 3553 sentencing objectives– the need to reflect seriousness of the offense, promote respect for the law, provide just punishment

A below-guideline sentence would fail to reflect the seriousness of the offense and send the wrong message to our community about the importance of respect for the law. Offenders today communicate with each other via the Internet, track convictions of fellow sex offenders, and share methods to avoid detection. If the message they receive is that as long as the offender who trades or possesses child pornography will consistently receive below-Guideline sentences the first time he is caught, then those who abuse children for their amusement and sexual gratification have no deterrence to stop.

Moreover, as previously stated, child pornography offenders prey upon the most vulnerable members of our society for their own sexual desires. The crime Salinas committed is serious, with lasting effects on the victims of those crimes.

The defendant's demonstrated sexual interest in children continues to make him a danger to children everywhere. Child pornography offenders do not discriminate between victimizing a child across the street or a child across the world. Indeed, child pornography offenders impact numerous victims all across the world by their behavior. This defendant's case is an ideal example of that type of victimization, and the defendant should be appropriately punished.

**Conclusion**

Salinas is a pedophile who was trading child pornography. He should be punished for such conduct as Congress intended and as the Sentencing Commission endeavored to accomplish with the present child pornography guidelines. Salinas's method of calculating the Guidelines is outdated; ignoring the changes in the statutory maximums for child pornography offenses, he asks the Court to return to old guideline ranges where the offense characteristics were considered within the context of a statutory maximum of five years for possession of child pornography.

Similarly, Salinas's individual characteristics fail to support a lesser sentence. No one can tell this Court with any certainty whether or not Salinas will re-offend, but Salinas's own history provides the clearest indicator of his susceptibility to committing a new crime after he is released—Salinas acquired child pornography, amassed a significant collection, and possessed extremely hard core images because he is addicted to those types of images.

For all the reasons previously stated, the United States respectfully requests this Court deny Salinas's motion for a below-Guideline sentence.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

/s/ Aisha Saleem
AISHA SALEEM
Assistant United States Attorney
Texas State Bar No. 00786218
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455
Email: aisha.saleem@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of October, 2014, I the foregoing Government's Response to Defendant's Motion for Downward Departure was served on Abe Factor, counsel for defendant, by first class mail in accordance with Federal Rule of Criminal Procedure 49.

/s/ Aisha Saleem
AISHA SALEEM
Assistant United States Attorney
